**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**DEREK LIND**                                                                              **PLAINTIFF**

**v.**                                       **Case No. 4:12-cv-588 KGB**

**ALLEN & WITHROW, Attorneys
At Law; TLO, LLC**                                                           **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Before the Court are Lorraine Hatcher's motion for attorney's fees (Dkt. No. 35) and Morris Thompson's motion for attorney's fees (Dkt. No. 40). Also before the Court are Ms. Hatcher's motion to strike Mr. Lind's response to her motion for fees (Dkt. No. 41) and Mr. Lind's motion for sanctions, damages, and injunctive relief, which he filed under seal (Dkt. No. 47).

The Court conducted a hearing on the pending motions. Prior to the hearing, the Court advised Ms. Hatcher and Mr. Thompson to bring to the hearing (1) an accounting of monies paid to them by, and spent by them on behalf of, Mr. Lind and (2) time sheets reflecting the hours actually worked on Mr. Lind's matter on his behalf, accounting separately for any and all time spent pursuing fees. Mr. Lind did not appear at the hearing. The Court denies Ms. Hatcher's motion to strike Mr. Lind's response to the motion for fees (Dkt. No. 41) and Mr. Lind's motion for sanctions, damages, and injunctive relief (Dkt. No. 47). The Court grants in part and denies in part Ms. Hatcher's motion for attorney's fees (Dkt. No. 35) and Mr. Thompson's motion for attorney's fees (Dkt. No. 40).

I.     **Factual Background**

A.     **Ms. Hatcher's Involvement**

Ms. Hatcher claims she represented Mr. Lind in prior actions and, as a result, came to represent him in this action at the time suit was filed.  She claims a contingent fee agreement with Mr. Lind for 40% of any recovery obtained.  At the hearing, Ms. Hatcher initially admitted that her contingent fee agreement with Mr. Lind was not in writing but seemed to contradict this statement during the course of the hearing.  The Court credits her first statement.  Regardless, Ms. Hatcher did not produce a written standard contingent fee agreement she has used in past engagements generally or used in her past engagements or representation of Mr. Lind specifically.

Ms. Hatcher relies upon and points to an email exchange with Mr. Lind that post-dates her motion to withdraw as counsel (Dkt. No. 35, Ex. 3).  In that email exchange from January 17, 2013, Mr. Lind requests that Ms. Hatcher draft a simple agreement and forward to him stating that Ms. Hatcher agrees to accept $5,000.00 for the work performed on Mr. Lind's case and that this sum will be paid directly to her from proceeds of any settlement obtained (Dkt. No. 38, Ex. 2).  Ms. Hatcher in response claims she is owed $5,200.00 or a fee fixed at 40% of the last offer (*Id.*).  She agrees to "take care of this tomorrow" (*Id.*), but she admitted to the Court during the hearing she never prepared such an agreement.  She claims she could not agree to share a fee with Mr. Thompson, with whom she did not practice in the same firm, so therefore did not prepare the agreement.  Mr. Lind claims he paid to Ms. Hatcher $1,000.00 at the start of the engagement in September 12, 2012 (Dkt. No. 38).  Ms. Hatcher contends he paid her only $500.00 to cover expenses and costs, but she has agreed in her calculation of the amount owed to

her to credit Mr. Lind for the $1,000.00 he claims he paid to her.  She seeks to recover the contingent fee minus what Mr. Lind claims to have already paid.

In the alternative to the contingent fee, Ms. Hatcher claims that she is entitled to a fee based on *quantum meruit*.  She claims she perfected her lien under Ark. Code Ann. § 16-22-304.  At the hearing, she first presented time sheets reflecting the hours she claims she worked on Mr. Lind's matter on his behalf.  Based on the number of hours she claims to have spent on the matter, 46.75, and her hourly rate of $150.00, Ms. Hatcher contends that she is owed $7,012.50 if she pursues *quantum meruit*.  Mr. Lind disputes this by claiming that Ms. Hatcher's withdrawal as his counsel did not comply with the Arkansas Rules of Professional Conduct.

In support of her *quantum meruit* claim, Ms. Hatcher presented electronic mail messages she exchanged with Mr. Lind in the course of her representation of him in this matter.  She claims 46 emails from him, and 52 mails she sent in response during the time she represented him.  She purports to bill separately for receiving an email and responding to an email.  Four responsive emails were sent to opposing counsel.

In addition to emails, Ms. Hatcher represented Mr. Lind when she filed a complaint on his behalf on September 13, 2012 (Dkt. No. 1).  Ms. Hatcher also filed a motion to file exhibits under seal, which was granted (Dkt. Nos. 2, 3).  The sealed documents were filed September 20, 2012 (Dkt. No. 4).  The summons and complaint were served.  Separate defendant Allen & Withrow initially answered the complaint October 3, 2012 (Dkt. Nos. 6).  Separate defendant TLO LLC filed a motion to dismiss for lack of jurisdiction, along with a six-page brief citing supporting authorities and a separate affidavit in support of its request (Dkt. Nos. 9, 10).  Ms. Hatcher, on behalf of Mr. Lind, responded to that motion on November 27, 2012.  She filed a one-paragraph response with no accompanying brief (Dkt. No. 11).  A joint motion to request

mediation was filed on behalf of Mr. Lind and separate defendant Allen & Withrow on November 29, 2012 (Dkt. No. 12).   Ms. Hatcher moved to withdraw as Mr. Lind's attorney on December 20, 2012 (Dkt. No. 14).   Ms. Hatcher stated in her motion that she was accepting employment that no longer permitted her to engage in the private practice of law.

Ms. Hatcher was licensed as an attorney in 1987.   Initially, she was licensed in Washington State.   She obtained an Arkansas license in 2003.   She maintained a private law practice in Arkansas from 2003 to 2013.   Her standard hourly rate while in private practice was $150.00 per hour; she first established that rate in 2003 and did not raise it.   She accepted employment with the Arkansas Court of Appeals in December 2013.

In her motion to withdraw, Ms. Hatcher represented that there were no outstanding financial obligations due the client and that counsel had discussed arrangements for the return of Mr. Lind's file documents.   Ms. Hatcher explained during the hearing that Mr. Lind prepaid the filing fee, costs of copies, service fee, and things of that sort.   She did not advance those costs to him, and that is what she intended to memorialize in her motion to withdraw, where she maintains those costs were $500.00.   Mr. Lind contends he paid Ms. Hatcher $1,000.00.   Again, Ms. Hatcher, instead of contesting that point, credits Mr. Lind with a payment of $1,000.00.   Ms. Hatcher filed her motion for fees on June 27, 2013 (Dkt. No. 35).

### B.   Mr. Thompson's Involvement

After Ms. Hatcher's motion to withdraw was granted, Mr. Thompson entered an appearance on behalf of Mr. Lind on February 1, 2013 (Dkt. No. 21).   On March 1, 2013, the Court referred the matter for mediation (Dkt. No. 24).   On May 6, 2013, Magistrate Judge Joe Volpe entered an order setting settlement conference for June 28, 2013 (Dkt. No. 30).   On June 25, 2013, Mr. Thompson filed a motion to withdraw as counsel for Mr. Lind (Dkt. No. 32).   His

motion was granted June 27, 2013 (Dkt. No. 33).  Mr. Thompson made no filings with the Court from the date he entered his appearance until the date he filed a motion to withdraw as counsel for Mr. Lind.  Mr. Lind and Allen & Withrow reached a confidential settlement agreement on or about June 28, 2013.

Mr. Thompson filed his motion for fees on July 18, 2013 (Dkt. No. 40).  Mr. Thompson contends that he is entitled to have his alleged contract with Mr. Lind enforced under Ark. Code Ann. §§ 16-22-301 through 16-22-304 or, in the alternative, the purported agreement reached with Mr. Lind on June 24, 2013.  In his motion, Mr. Thompson asserts an attorney's lien in the amount of $2,800.00 or 40% of the last increase of $7,000.00 in the amount offered to Mr. Lind in settlement (Dkt. No. 40).  When Mr. Thompson became involved in the case, there was a settlement offer on the table.  During the time Mr. Thompson was involved in the case, he claims the settlement offer increased.

At the hearing, Mr. Thompson claimed he entered into a contingent fee agreement with Mr. Lind in February 2013.  He represented at the hearing that, during his first meeting with Mr. Lind, they discussed a fee arrangement and that Mr. Lind suggested the contractual terms.  Mr. Lind allegedly indicated he had been involved in a number of litigated matters, was familiar with the customary one-third contractual amount which increases progressively should actual litigation begin, and offered 40% as the contingent amount to entice Mr. Thompson to come on board.  Mr. Thompson claims Mr. Lind wanted to structure the agreement consistent with the agreement he had with Ms. Hatcher.  Mr. Thompson has produced no written contingent fee agreement with Mr. Lind or standard written contingent fee agreement he has used in the past.  Mr. Lind denies Mr. Thompson's claims about these terms (Dkt. No. 45).

Mr. Thompson contends that the documents that substantiate his claim to fees are attached to his motion (Dkt. No. 40).  Those documents include two email messages from him to Mr. Lind, which are not specific, do not include a draft fee agreement, and do not reference a specific amount or terms.  The third document is a facsimile sent from Mr. Thompson to Mr. Lind with a draft motion and order seeking to present to the Court the theory that Mr. Thompson is entitled to 40% of the additional monies offered in settlement or $2,800.00 in fees.  He claims these documents confirm the prior February agreement.

Mr. Thompson contends that, after his negotiations with opposing counsel, the settlement offer to Mr. Lind increased and, according to Mr. Thompson, had "the very real prospect of more perhaps to come."  Mr. Thompson contends he conveyed the offer to Mr. Lind and told him to think about it overnight.  Mr. Thompson asked Mr. Lind to give him an answer before 3:00 p.m. the following day due to a scheduled conference at that time with opposing counsel.  Mr. Thompson claims that he learned through opposing counsel, not Mr. Lind, that Mr. Lind was terminating him as counsel.  He claims it was a "total shock and surprise."  Opposing counsel also informed Mr. Thompson that Mr. Lind intended to accept the offer.  Mr. Thompson has not had any substantive discussion with Mr. Lind about why he was terminated.

After being terminated, Mr. Thompson discussed with Mr. Lind his claimed attorney fee on or about July 10, 2013, according to Mr. Thompson.  Mr. Thompson claims the documents attached to his motion for fees were the result of that conversation (Dkt. No. 40-3).

At the hearing, Mr. Thompson did not present any records regarding time spent on Mr. Lind's file.  He maintains he relied upon a contingent fee agreement with Mr. Lind, did not keep such records as he represented Mr. Lind, and was concerned any records created now might not fairly represent his time.  Mr. Thompson did not inform the Court of his standard hourly rate.

## II.    Analysis

Rule 1.5(c) of the Arkansas Rules of Professional Conduct states in pertinent part:

(a)    A lawyer's fee shall be reasonable.  A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

    (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

    (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

    (3) the fee customarily charged in the locality for similar legal services;

    (4) the amount involved and the results obtained;

    (5) the time limitations imposed by the client or by the circumstances;

    (6) the nature and length of the professional relationship with the client;

    (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

    (8) whether the fee is fixed or contingent.

(b)    The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate.  Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c)    A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law.  A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.  The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

    . . .

This Rule is based on sound reasoning.  Disputes such as the one before this Court are avoided when attorneys take care of the business of practicing law, as well as their clients.  This

Court inquired of Ms. Hatcher and Mr. Thompson at the hearing whether they could cite to any authority explaining why those provisions of the Arkansas Rules of Professional Conduct do not control here.  Neither cited authority to the Court.

The language of Rule 1.5(c) is that "[a] contingent fee agreement shall be in writing." Even if no written contingent fee agreement is produced to the Court, from the evidence taken as a whole, the Court is entitled to make a determination as to whether a written fee agreement existed.  *See, e.g.*, *Mobley v. Harmon*, 854 S.W.2d 348, 350, 368 (Ark. 1993).  There is no indication here that Ms. Hatcher's purported contingent fee agreement with Mr. Lind was in writing.  There is no indication here that Mr. Thompson's purported contingent fee agreement with Mr. Lind was in writing before Mr. Lind terminated Mr. Thompson's representation, and there is no indication that Mr. Lind ever executed any writing sent to him by Mr. Thompson. The Court will not award a contingent fee under these circumstances.

Ms. Hatcher contends that, if the Court does not award a contingent fee, she still should recover under a theory of *quantum meruit*.  The Arkansas Supreme Court has explained:

> Attorney-client contracts contain an implied provision that the client may discharge the attorney at any time, either with or without cause.  *Crockett & Brown v. Courson*, 312 Ark. 363, 849 S.W.2d 938 (1993).  Attorneys who are discharged *with cause* retain a lien, but the amount of compensation is determined on a quantum-meruit basis, and the standard for that award is based on the amount of time and expense devoted to the case by the attorney.  *Id*. (emphasis added). When an attorney is dismissed *without cause*, the attorney is to be compensated based upon the fee agreement.  *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999) (emphasis added).

*Harrill & Sutter, PLLC v. Kosin*, 378 S.W.3d 135, 142 (Ark. 2011) (involving a contingency-fee agreement the terms of which were undisputed).  There is no bright-line rule under Arkansas law to employ when determining whether an attorney was fired for cause.  *Mobley Law Firm, P.A. v. Lisle Law Firm, P.A.*, 120 S.W.3d 537, 540 (Ark. 2003).

"The attorney-lien statutes allow an attorney 'to obtain a lien for services based on his or her agreement' with the client and 'to provide for compensation in case of settlement or compromise without the consent of the attorney.'" *Kosin*, 378 S.W.3d at 144 (citing Ark. Code Ann. § 16-22-301). "[T]he lien established in favor of the attorney attaches to the proceeds of any settlement, verdict, decision, judgment, or final order in his or her client's favor. However, attorneys who are discharged with cause retain a lien, but the amount is determined on a quantum-meruit basis." *Id.* (citing *McDermott*, 986 S.W.2d 843). The rationale behind this rule is that "where the attorney has conferred a benefit upon the client, such as legal services and advice, the client is responsible to pay such reasonable fees." *Id.* (citing *Salmon v. Atkinson*, 137 S.W.3d 383 (Ark. 2003)). Among the factors Arkansas courts consider in

> determining the reasonableness of an attorney's fee, not specifically fixed by contract, are: (1) the attorney's judgment, learning, ability, skill, experience, professional standing, and advice; (2) the relationship between the parties; (3) the amount or importance of the subject matter of the case; (4) the nature, extent, and difficulty of services in research; (5) the preparation of pleadings; (6) the proceeding actually taken and the nature and extent of the litigation; (7) the time and labor devoted to the client's case, the difficulties presented in the course of the litigation, and the results obtained.

*Id.* (citing *Courson*, 849 S.W.2d 938).[1]

While an attorney may testify concerning his opinion of the value of his own services, such testimony is not binding on the court. *See Shackelford v. Ark. Baptist Coll.*, 26 S.W.2d 124, 125 (Ark. 1930). The failure to keep a record of the time spent on the case does not preclude recovery of a fee under a theory of *quantum meruit*. *See Monsanto Chem. Co. v. Grandbush*, 162 F. Supp. 797, 804-05 (W.D. Ark. 1958).

---

[1]  The Court notes that, at the hearing, counsel mentioned the *Chrisco* factors. *Chrisco v. Sun Indus., Inc.*, 800 S.W.2d 717 (Ark. 1990). Arkansas courts have applied those factors to determine a reasonable fee award to a prevailing party, including fee awards pursuant to Ark. Code Ann. § 16-22-308. *See, e.g.*, *Kosin*, 378 S.W.3d at 145. That analysis does not apply here.

As to Ms. Hatcher's claim for fees, *Kosin* is not on all fours with the facts presented here. Ms. Hatcher was not discharged by Mr. Lind; instead, she voluntarily took other employment that prohibited her from engaging in the private practice of law and continuing to represent Mr. Lind.  She opted not to proceed with the representation.  Even with that distinction, the Court will apply the theory of *quantum meruit*, given the rationale behind the Arkansas Supreme Court's application of it in *Kosin* and the Court's determination that the same rationale likely applies here.  The Court determines Ms. Hatcher did confer a benefit upon Mr. Lind while she represented him, such as legal services and advice, and Mr. Lind is responsible to pay a reasonable fee for that benefit.

Ms. Hatcher claims that, under *quantum meruit*, she is entitled to $7,012.50 as a result of spending 46.75 hours at $150.00 per hour.  She reduces this amount by $521.64, which represents the difference between the $1,000.00 Mr. Lind claims he paid Ms. Hatcher for expenses and the $478.36 Ms. Hatcher claims she spent on expenses.  She requests payment from Mr. Lind in the amount of $6,490.86.

The Court has reviewed Ms. Hatcher's calculations and applied the following factors when considering her request for fees and costs:  (1) the attorney's judgment, learning, ability, skill, experience, professional standing, and advice; (2) the relationship between the parties; (3) the amount or importance of the subject matter of the case; (4) the nature, extent, and difficulty of services in research; (5) the preparation of pleadings; (6) the proceeding actually taken and the nature and extent of the litigation; (7) the time and labor devoted to the client's case, the difficulties presented in the course of the litigation, and the results obtained.  Considering those factors, the Court reduces the amount to which Ms. Hatcher is entitled to be paid.

As an initial matter, for the time period May to December 2012, she charges 0.25 per hour for a review of each of 40 emails. She presented the emails to the Court for review at the hearing. The Court has reviewed those emails. The first electronic mail message Ms. Hatcher submitted is dated June 28, 2012. Nearly all are very short messages exchanged between Ms. Hatcher and Mr. Lind. Few, if any, address matters of substance to the litigation. As Ms. Hatcher admits, only six messages included attachments of any sort. The Court finds 0.10 per hour for a review of each of 40 emails reasonable, and the Court adjusts Ms. Hatcher's calculation accordingly. For six emails that had attachments, Ms. Hatcher billed 0.50 each for review. The Court finds 0.25 per hour for a review of each of 6 emails with attachments reasonable, and the Court adjusts Ms. Hatcher's calculation accordingly. For the same time period May to December 2012, she charges an additional 0.25 per hour to respond to each of 50 emails from Mr. Lind. The Court finds 0.10 per hour for responding to each of these 50 emails reasonable, and the Court adjusts Ms. Hatcher's calculation accordingly. The Court finds reasonable Ms. Hatcher's billing of 0.25 per hour for two emails to opposing counsel. The Court finds reasonable the remainder of Ms. Hatcher's time spent working on her client's behalf. As a result of these adjustments, the Court determines that Ms. Hatcher spent a total of 31.75 hours working on Mr. Lind's behalf at a rate of $150.00 per hour for a total of $4,762.50. Like Ms. Hatcher, the Court will credit Mr. Lind the difference of $521.64, which represents the difference between the $1,000.00 Mr. Lind claims he paid Ms. Hatcher for expenses and the $478.36 Ms. Hatcher claims she spent on expenses. As a result, if the Court were to apply a strict mathematical formula, the Court would determine the amount owed to Ms. Hatcher by Mr. Lind for fees and costs is $4,240.86.

However, the Court, in considering the relationship between the parties, notes that in the January 17, 2013, email, Mr. Lind requests that Ms. Hatcher draft a simple agreement and forward to him stating that Ms. Hatcher agrees to accept $5,000.00 for the work performed on Mr. Lind's case and that this sum will be paid directly to her from proceeds of any settlement obtained (Dkt. No. 38, Ex. 2).  Although there appears no agreement was reached between Mr. Lind and Ms. Hatcher at the time or at any point in time based on the Court's review of this record, the Court considering the factors set forth in *Kosin* and the record before it, will award Ms. Hatcher $5,000.00 in fees and costs for her work on Mr. Lind's behalf reduced by the $521.64 she credits him as the difference between the $1,000.00 Mr. Lind claims he paid Ms. Hatcher for expenses and the $478.36 Ms. Hatcher claims she spent on expenses.  The Court awards Ms. Hatcher $4,521.64 in fees and costs.

As for Mr. Thompson's claim, it is more difficult.  It is unclear whether Mr. Thompson was terminated by Mr. Lind for cause.  The Court acknowledges Mr. Lind claims that Ms. Hatcher misrepresented Mr. Thompson's legal career and qualifications when recommending him as her replacement (Dkt. No. 41, Ex. A).  Mr. Lind does not state with specificity in his filings with the Court the nature of the cause, if he in fact intended to terminate Mr. Thompson for cause.  Moreover, Mr. Lind did not attend the hearing and attempt to make a case for why his termination of Mr. Thompson was for cause.  As a result, the Court determines that, on the record before it, it is not able to find that Mr. Thompson was terminated for cause.  Mr. Thompson admitted at the hearing that he did not perfect a lien; he failed to follow the statutory requirements.  Despite this, given that he was not terminated for cause, the Court determines Mr. Thompson is entitled to a fee.  The Court will not award Mr. Thompson a contingent fee for the

reasons explained above.  The Court is inclined to award Mr. Thompson a fee based on *quantum meruit*, as he likely conferred a benefit upon Mr. Lind, such as legal services and advice.

However, Mr. Thompson did not present the Court with any estimate by testimony or documentation of the actual time spent working on Mr. Lind's behalf.  Mr. Thompson did not provide to this Court the hourly rate he customarily charges other clients.  The Court is left to consider these factors:   (1) the attorney's judgment, learning, ability, skill, experience, professional standing, and advice; (2) the relationship between the parties; (3) the amount or importance of the subject matter of the case; (4) the nature, extent, and difficulty of services in research; (5) the preparation of pleadings; (6) the proceeding actually taken and the nature and extent of the litigation; (7) the time and labor devoted to the client's case, the difficulties presented in the course of the litigation, and the results obtained.  As a result of considering these factors and the record before it, the Court credits Mr. Thompson's claim that he obtained an increase in the settlement figure for Mr. Lind; credits Mr. Thompson's statements that he met with Mr. Lind at least once, spoke with Mr. Lind about settlement at least once, and conferred with opposing counsel regarding settlement; and awards Mr. Thompson $1,000.00 in fees and costs from Mr. Lind.

* * *

For these reasons, the Court denies Ms. Hatcher's motion to strike Mr. Lind's response to the motion for fees (Dkt. No. 41) and Mr. Lind's motion for sanctions, damages, and injunctive relief (Dkt. No. 47).  The Court grants in part and denies in part Ms. Hatcher's motion for attorney's fees (Dkt. No. 35) and Mr. Thompson's motion for attorney's fees (Dkt. No. 40).  Within ten days of the date of this Order, Ms. Hatcher and Mr. Thompson should inform the Court of how to make checks payable to each of them for attorney's fees.  The Court will then

direct the Clerk of Court to make payment to Ms. Hatcher and Mr. Thompson for attorney's fees consistent with this Order, remitting the remainder to Mr. Lind as a portion of his settlement in this matter.

IT IS SO ORDERED this 22nd day of November, 2013.


KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE